# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br> vs. <br><br> $33,020.00 IN U.S. CURRENCY, $3,520.00 IN U.S. CURRENCY, <br><br> Defendants. | CASE NO. 08cv1706-BEN (CAB) <br><br> ORDER DENYING AMENDED MOTION TO SUPPRESS EVIDENCE OF CLAIMANT CHRISTIAN VENEGAS <br> [Dkt. No. 35] |

## I. INTRODUCTION

Now before the Court is Claimant Christian Venegas' Amended Motion to Suppress Evidence. Venegas moves to suppress evidence of forfeitability obtained from a police traffic stop.

## II. PROCEDURE

The procedures to be used for a civil forfeiture action are set out in the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. §§981, *et seq.*, Rules C, E, and G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and the Federal Rules of Civil Procedure.

Under CAFRA, a challenge to the legality of an asset seizure based upon Fourth Amendment protections may be brought under Supplemental Rule G(8)(a). *United States v. $50,040*, slip op., Case No. C 06-4522 WHA, 2007 WL 1176631 (N.D. Cal. Apr. 20, 2007)

- 1 - 08cv1706

1  ("Challenges to the legality of the seizure – whether there is probable cause to believe the property
2  is subject to forfeiture at time of seizure – are brought pursuant to a motion to suppress under Rule
3  G(8)(a), not a motion to dismiss."). Title 18 U.S.C. §981(b)(2) provides that "a seizure may be
4  made without a warrant if ...(B) there is probable cause to believe that the property is subject to
5  forfeiture and – (i) the seizure is made pursuant to a lawful arrest or search; or (ii) another
6  exception to the Fourth Amendment warrant requirement would apply." Rule G(8)(a) provides,
7  "[i]f the defendant property was seized, a party with standing to contest the lawfulness of the
8  seizure may move to suppress use of the property as evidence." Although the Claimant does not
9  specify the basis for his motion to suppress, his motion will be treated as one invoking Rule
10  G(8)(a).

### III. FACTS

12  On February 19, 2010, the Court held an evidentiary hearing. In this case, the Claimant
13  was driving a motor vehicle. Law enforcement officers were following the Claimant. Officers
14  were following the Claimant because he had been seen leaving a house where illegal narcotic
15  activity was suspected. As the Claimant passed through an unusual, five-sided intersection (the
16  intersection of Lisbon Street, Imperial Avenue, and 69th Street in San Diego, California), he did
17  not use a turn signal.

18  Officers made a traffic stop based upon §22107 of the California Vehicle Code. That
19  section requires the use of a turn signal when turning. Specifically, §22107 provides, "[n]o person
20  shall turn a vehicle from a direct course or move right or left on a roadway until such movement
21  can be made with reasonable safety and then only after the giving of an appropriate signal..." As
22  the Claimant entered the intersection, he was traveling from Lisbon Avenue, across 69th Street, and
23  onto Imperial Avenue. To travel from Lisbon Avenue to Imperial Avenue required the Claimant
24  to change the direction of his vehicle to the left approximately 25-30 degrees.

### IV. ARGUMENT

26  The Claimant argues that his movement through the intersection was so close to a straight
27  line that it did not qualify as a "turn." And if the movement did not qualify as a "turn," argues the
28  Claimant, then no turn signal was required by §22107. The Claimant further argues that the law

enforcement officer was mistaken as to the law since no turn signal is required where there is no "turn."

### A. Traffic Stops

If the initial traffic stop is lawful, then the resulting search is lawful. On the other hand, if the initial traffic stop is unlawful, then the resulting search is unlawful. If the search is unlawful, then the defendant money and other evidence would be subject to suppression as fruit of an unlawful stop and search. *United States v. $186,416.00 in U.S. Currency*, 590 F.3d 942, 950 (9th Cir. 2010). Therefore, this motion to suppress turns on the legality of the traffic stop.

#### 1. Officer Mistakes

Before conducting an investigatory traffic stop, law enforcement officers must form at least a reasonable suspicion in order to comply with the Fourth Amendment. *United States v. Twilley*, 222 F.3d 1092, 1094 (9th Cir. 2000); *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000) (Fourth Amendment requires reasonable suspicion, not probable cause, for a traffic stop). Where an officer's suspicion arises from his own mistake, it makes a difference whether the mistake was one of law or fact. *Twilley*, 222 F.3d at n.1 ("In *Lopez-Soto*, however, this court declared the distinction between a mistake of fact and a mistake of law crucial to determining whether reasonable suspicion exists to stop a vehicle.").

In this circuit, where the officer's suspicion is based on a mistake of fact, if held reasonably and in good faith, the mistaken belief may still provide a lawful basis for a traffic stop. *Id.* at n.1 ("A factual belief that is mistaken, but held reasonably and in good faith, can provide reasonable suspicion for a traffic stop."). On the other hand, an officer's belief based on a mistaken understanding of the law cannot give rise to the reasonable suspicion necessary for a lawful traffic stop. *Id.* at 1096 ("In other words, if an officer makes a traffic stop based on a mistake of law, the stop violates the Fourth Amendment.").

##### *a. Mistakes of Law*

*Twilley* illustrates the situation where reasonable suspicion for a traffic stop was lacking because of a mistake of law. In *Twilley*, a California Highway Patrol officer spotted a vehicle with a Michigan license plate on the rear. The officer mistakenly believed that Michigan law required a

1  license plate on the front of the vehicle in addition to the license plate on the rear.  It was the
2  officer's basis for stopping the vehicle.  However, the officer was wrong as a matter of law.
3  Michigan law did not require display of a front license plate.  Consequently, the Ninth Circuit held
4  that the officer did not have reasonable suspicion, the traffic stop violated the Fourth Amendment,
5  and evidence from the search that followed should be suppressed.  *Id.*

6            ***b.  Mistakes of Fact***

7  *United States v. Wallace*, 213 F.3d 1216 (9th Cir. 2000), illustrates the opposite situation.
8  In *Wallace*, as in the present case, police officers were following a vehicle that was suspected of
9  involvement with illegal narcotics activity.  The officers were hoping to see a traffic violation in
10 order to stop the driver.  The officer noticed that the front window glass of the target car was
11 darkly tinted.  California's Vehicle Code prohibits dark tinted windows on the front part of a car.
12 Specifically, any tinting darker than tinted glass which allows 70% light transmittance is
13 prohibited by California law.

14      Based upon the dark tinting, the police officer pulled Wallace over and the ensuing search
15 of his vehicle revealed 130 pounds of marijuana.  The officer correctly believed that the vehicle
16 code prohibited dark tinting.  That he incorrectly believed that all tinting was prohibited, or that he
17 had not precisely measured the light transmitting quality of the window glass (which was later
18 measured as only 29%), was of no moment.  In holding that the officer had objective, probable
19 cause justifying the traffic stop, the Ninth Circuit explained that the officer "was not taking the bar
20 exam." *Id.* at 1220.  Instead, the issue, "is not how well [the officer] understood California's
21 window tinting laws, but whether he had objective, probable cause to believe that these windows
22 were, in fact, in violation."  Wrote the court, "Officer Lieber's observations correctly caused him
23 to believe that Wallace's window tinting was illegal; he was just wrong about exactly why." *Id.*
24 Consequently, the Ninth Circuit reversed, holding that the motion to suppress should be denied.
25 *Id.* at 1221.

26 **B.  Venegas' Traffic Stop Was Lawful**

27      In this case, the law enforcement officers correctly believed that California law requires a
28 turn signal when making a turn.  They correctly observed Mr. Venegas proceed through an

intersection requiring some degree of deviation from a straight line. They correctly observed that Venegas did not signal a turn.

Whether the officers are correct that the deviation from a straight line, to the left, taken by Venegas was enough of a "turn" to require a turn signal under the law is not the deciding factor. "What is generally demanded of the many factual determinations that must regularly be made by agents of the government is not that they always be correct, but that they always be reasonable." *Lopez-Soto*, 205 F.3d at 1106 (quoting Illinois v. Rodriguez, 497 U.S. 177, 185 (1990)). The officers may have made a mistake of fact – the vehicle's deviation from a straight course through the intersection may, or may not, have been enough of a "turn" to require a turn signal. But if this was a mistake, it was a mistake of fact and not of law. It was a reasonable observation of the facts, the angle of the intersection, the change in course of the vehicle, the absence of a signal given. It was a good faith observation. It was not a mistake of law. The officers were correct that a turn requires a turn signal. Therefore, there was an objectively reasonable suspicion present which sufficiently justifies Venegas' traffic stop.

## V. CONCLUSION

Because the traffic stop and resulting search were lawful under the Fourth Amendment, Claimant's motion to suppress under Supplemental Rule G(8)(a) is, hereby, DENIED.

DATED: June 1, 2010

_____
Hon. Roger T. Benitez
United States District Judge